May I reserve five minutes for rebuttal, please, sir? Yeah. Good morning, Your Honors. My name is David Hanna, and I'm proud to be here representing Local 112 of the International Brotherhood of Electrical Workers and its business manager, David Smith. Mr. Smith is in the back of the courtroom. Local 112 is a local union of the IBEW, which is geographically located in Kennewick, Washington. The business manager is the highest-ranking office within the IBEW structure. The business manager is essentially the boss of an IBEW local union. By statute, business managers are elected periodically, every three years. In David Smith's situation, he actually began his career as business manager, having been appointed business manager by the executive board when the prior business manager, a fellow by the name of Wilcoxon, was removed from office. When Mr. Smith assumed office as business manager, he inherited a staff, two business representatives slash organizers, and two clerical employees, including the plaintiff appellee here, Ms. Francisco-Farrell. Mr. Smith, as the record indicates, retained those staff members up to the point of his election in 2001. In 2001, under a fairly odd set of circumstances, one of the clerical employees, Ms. Francisco-Farrell, was the fiancé of the fellow who was running against Mr. Smith for business manager. Not surprisingly, Ms. Francisco-Farrell supported her fiancé in that election, and Mr. Smith did not discourage her from doing so. However, during the course of the election, and particularly thereafter, Ms. Francisco-Farrell showed a contempt for Mr. Smith and Mr. Smith's administration. Doing what he believed the law entitled him to do, exercising his plenary power as business manager under the IBW Constitution and bylaws, Mr. Smith elected to discontinue Ms. Francisco-Farrell's services and dismissed her on the basis that she did not support him or his administration. On the basis of, that is, disloyalty. Ms. Francisco-Farrell was in a fairly unique position as union staff people go. Ms. Francisco-Farrell was both an employee of and a member of Local 112. In the union world, typically union staff is a member of a union different than. The union that they are working for, but in Ms. Francisco-Farrell's case, she was employed by Local 112, was a member of Local 112, but did not enjoy employment under a collective bargaining agreement that provided a just cause provision. She was then an at-will staff member of Local 112 and a member at the same time. During the course of the campaign, Ms. Francisco-Farrell did some campaigning for her fiance, but it was primarily in the realm of lobbying executive board members on her fiance's behalf. It truly was, as the record demonstrated during the course of the trial, her conduct with respect to interactions with staff workers and more particularly after the election that caused Mr. Smith to decide to not retain Ms. Francisco-Farrell. After she was dismissed, she filed suit claiming a violation of a variety of things, including a violation of the LMRDA, saying that this was a retaliation for her exercise of rights under the Labor Management Reporting and Disclosure Act's free speech provisions to have been removed for supporting her fiance. A trial was had, and the jury returned a verdict in Ms. Francisco-Farrell's behalf, and an award of attorney's fees followed. And we believe, and quite strongly so, that the only reason the verdict was returned in the fashion that it was, was that the jury was not properly instructed on what the criteria are, what the elements are of an LMRDA claim. The jury was given two different theories for liability. Is that true? Well, the jury was given two instructions which read very similarly that sort of combined two different elements, and that was part of the problem, actually. All right. What about the verdict? Wasn't there a special verdict here which gave them alternative bases? What the verdict said was that you had to find that she was not a confidential or not a confidential employee, or that she was retaliated against for the exercise of rights. That really is not a proper construction of the interplay between Sections 101, 609, and 102 of the LMRDA. Under any of those statutes, under any theory in which LMRDA plaintiffs proceed, they must show that the detrimental action affected their rights of membership. No matter what theory you proceed on, you must prove that, and neither of the instructions on either of those alternate theories required the jury to find that there was any impact on her rights of union membership. And, in fact, there were not. She enjoyed the same membership rights the day before and the day after her discharge. She exercised those rights by filing internal union charges against the business manager following her dismissal. She remains a member and, in fact, has contested the most recent election. Didn't the evidence show, though, retaliation for the exercise of her rights as a union member? No. The evidence showed that she was discharged for disloyalty to the administration. And that disloyalty – I'm sorry? What was the disloyalty? The disloyalty was name-calling of staff members within the union office, of people that supported the business manager. It was telling people on the phone that the business manager that had just been elected had been in place too long. It was telling people on the phone that the union needed a change and that this administration was not the appropriate administration. Weren't some of those statements protected in her right to make statements? They absolutely were protected insofar as if her membership had been stripped, if she had not been allowed to run for union office, if she had not been allowed to file internal union charges, if any of those rights of membership had been affected. They absolutely were protected statements. What is not protected – and the Supreme Court was clear on this in construing the statute and Congress's intent – is what is not protected is a tenure of employment as a union employee for the exercise of those statements. Throughout our brief, there are cases, the most recent of which involves a Teamster local, and this is a Third Circuit case by the name Morris v. Hoffa, 361 Fed 3rd 177. The Third Circuit decided virtually the same day that we submitted our reply briefs. But what you had there is you had union staff members who were removed from office when the union was placed under trusteeship. There was exercise of union rights, and the Third Circuit was very clear in reading the Supreme Court's prior decisions and the congressional history that the LMRDA simply was not designed to protect interests in union employment as opposed to rights of union membership. Let me ask you this. Assuming that we agree with you in terms of union employment is different and not protected in this retaliation theory, the special verdict form had a different theory as well, which was to say the question was did the defendants violate plaintiff's rights as a member under Federal law by terminating her as part of a deliberate and purposeful attempt to suppress dissent within the union? Now, without yet addressing the question as to whether there was sufficient evidence for that, is it a violation of Federal law if she was discharged as part of a deliberate and purposeful attempt to suppress dissent within the union? No. And the reason for that is that she can be fired even though it is part of a deliberate and purposeful attempt to suppress dissent. So long as her rights of union membership are not affected. And that passage, the purposeful and deliberate attempt to suppress language, comes from an exception that the Court noted in Dicta, footnote 11 of Finnegan v. Lau. What the Court said there is we may think differently about Section 102 claims if the person that we're talking about is a non-confidential staff member of a union. But what every court since then has said about Section 102 claims, which is this purposeful and deliberate attempt to suppress, that's a 102 claim. 102 itself is not a substantive provision. It's a vehicle for enforcing Section 1, Title I rights, which are the rights of union membership. All the courts interpreting Section 102 involving staff employees have said that there's still the requirement that you prove an impact on membership rights. Assuming that, I read the cases differently and I'm not, I've not made up my mind on this point. But assuming that it is a cause of action, if she shows a deliberate and purposeful attempt to suppress dissent within the union without the further qualifier that you think is applicable, let's say affecting union rights, is there sufficient evidence to support the jury's conclusion that there was a deliberate and purposeful attempt to suppress dissent within the union? None whatsoever. And the case law on this is fairly sparse. I said is there sufficient evidence. You said there's no evidence when you said none whatsoever? Oh, I'm sorry. Let me start again. Okay. I may have misspoke. Yeah. Okay. The only evidence was that she was disloyal and she was terminated. The case law talks about a history of efforts to suppress. The case law talks about situations in which, for example, I mean, the Morris v. Hoffa case is a perfect example, where you've got people who are in a position of authority, most particularly elected union officers who are removed, to send a signal. What signal does it send if a disloyal clerical employee is discharged? That is not, I should not think, going to cause anybody to not come out and vote. It did not, as the record was clearly indicated, did not cause the discipline or punishment of any other worker. It was an isolated event of a discharge of an at-will employee. There was no ripple from that. And it's the ripple that we look for. And there was none. Did you cite Morris v. Hoffa? It was decided after our replied brief came out, Your Honor. Did you notice to opposing counsel in the court that you were going to rely on that? Your Honor, I found it Sunday and I did not. And I apologize. Shall I continue? Please go ahead. I just made a little note. I found it Sunday. It's better than finding it Wednesday. Getting back to your point, Judge Fletcher, regarding this 102 claim issue, what the plaintiff appellee needs and what she does not find is case law establishing some form of exception in the case where you have a 102 claim on behalf of a staff member. There isn't any law on that point. And I would draw the Court's attention in that regard. In the world of LMRDA cases, of course, you have elected union officers, you have appointed union officers, you have appointed staff who have policymaking or confidential authority, and then staff who do not. There aren't very many cases out there involving staff members who get involved in union politics who are of a non-confidential, non-policymaking. I'm assuming for the moment that the jury found that she was in a non-confidential position, although I don't concede that point because I think she was. But Brunt v. Service Employees Union, which is cited in the briefing, is a particular note in that regard. What you had there were three appointed staff members who were dismissed. This is a Seventh Circuit decision from 2002. Three staff members who were discharged for disloyalty, for not supporting the candidate who prevailed in the election. The stifling dissent argument was made in that case in an attempt to amend the complaint to add a Section 102 claim late in the day. What the Court's Seventh Circuit said about that is, in rejecting this stifling dissent claim, was that the elected officer in that case did exactly what Finnegan says the elected officer is permitted to do, namely, quote, fire any employees on the basis of disloyalty to him. That is exactly what Mr. Smith did, and he did nothing more. Throughout the Ninth Circuit, there are literally thousands of local unions that are headed by elected business managers or secretary treasurers or presidents. The term varies, but the function is the same. Many of them have significant, staffs of significant size. Some have small staffs. But all have this issue in common. Every time there is a union election, the staff members either support the incumbent, oppose the incumbent, or remain neutral. These elections are often heated. Very often they are heated. Staff is often vehement in their support or non-support. What we believe the law under Finnegan and its progeny allows is for the incoming or retained executive officer to go through an election, look at his staff, retain those that are loyal and who supported him, and not retain those who are not. Counsel, as a practical matter, if someone remains neutral, how would his or her employment be affected? Well, in many, many locals, Judge Rollison, the staff members keep their heads down during the election. Being neutral and being disloyal, being disruptive and simply staying out of the way are very different things, as you all know. And all that we believe the law permits is that the retained union officer or incoming union officer be allowed to rid himself or herself of those who are disloyal and disruptive without violating the LMRDA. Earlier in your argument, you pointed out that it's rare to have a situation like this one, where a secretary is also a member of the same union. In what cases are you relying on to support what you just said, where that was part of the facts? Well, actually, Brunt was one of those, because what often happens, Judge, is that the person in a staff position will maintain dual membership. It's not uncommon, for example, in the UFCW, the United Food and Commercial Workers, for someone to be hired out of one of the grocery stores to work in the union office, retain their UFCW membership for purposes of benefits and yet become a member of the OPEIU, the office employees. What I meant by rare in this particular instance was that Ms. Francisco Farrell had IBEW Local 112 membership and that alone. Let me ask you a different question. You just said in addressing Judge Rawlinson that the only thing the law allows is for the incoming officer or officers to get rid of those who had actively opposed. Without running afoul of the LMRDA. But how can that be so, because you just told me that these are at-will employees? Well, they're not all at-will employees. So your statement was not directed to what they can do to at-will employees? Well, certainly with an at-will employee, the only thing she had protecting her as an at-will employee are the general laws regarding age, race, sex discrimination, and the LMRDA. So in your view, if the union staff employees are at-will employees, the incoming officer can clean house, get rid of all those who are disloyal, get rid of all of those who have had their heads down, and even go through and get rid of everybody and appoint their mother-in-law. As an at-will employee, assuming they're not running afoul of the statute. They're not going to run afoul of the LMRDA. But with most employees, they have this built-in extra protection of the collective bargaining agreement. I understand. So your statement of Judge Rawlinson then was not really specifically applicable to this case where the employee is at-will? Well, I think the question was, what about people who remain neutral? And you're correct in that if the employee had remained neutral, LMRDA still would not have been violated. So your argument, if I understand what you've just responded to, Judge Fletcher, is that because she was an at-will employee, if the business agent had said, I'm firing you because you opposed me in the union election, that we would have to uphold that? That is correct. Although in the context of your lack of support for me or your ---- No, opposed me. Your opposition to me in the manner it was done is what we have here. And that was not a violation of the LMRDA in the absence of any effect on rights of membership. And that's the caveat I have to keep coming back to. You know, we've come to the end of your time. Let's hear from the other side, and we'll give you a minute, Rubato. Thank you. May it please the Court. My name is Mike Love, and I'm representing the appellee in this matter, Terry Francisco Farrell. Ms. Farrell is present as well, and I'm equally proud to represent her in this matter. I want to point out several ---- start out by responding to several issues that Mr. Hanna raised on behalf of Local 112 and Mr. David Smith. An excerpt of Record 38, you have the termination letter of August 10, 2001. And what is at issue here today is the notion of speech. The LMRDA was passed at a very critical time in the 1950s. As I recall from my readings, there were Labor Senate committee hearings that Bobby Kennedy was on, and they took much testimony involving unions. And out of that, they passed the LMRDA. And one of the important amendments that they passed to the LMRDA to make sure that unions like Local 112 were And in that Bill of Rights, members, as Terry Francisco Farrell was, a member of the International Brotherhood of Electrical Workers and Local 112, a member in good standing, she had certain membership rights. And one of those rights was a right of speech, which is at the heart of this case today. And if you look at excerpt of Record 38, in that letter, Mr. Smith advised her that he was terminating her employment. And he was terminating her employment because he said in the second paragraph, the second sentence, the member's business is not well served when some staff members do not support the elected leadership and speak against it. I have received reports that you inserted yourself into the election campaign against me. One of the things that he terminated her for was outside of the office, at a social function, she approached another member in her capacity as a member and tried to persuade that person, again, exercising her protected speech under the LMRDA, to convince that person to support her then-fiancee, Chris Wickstrand, for the position of business manager. And she was retaliated against for doing so. A retaliatory discharge in violation of her membership rights, which is clearly protected under the LMRDA. But counsel, what about opposing counsel's argument that the membership aspect of it should have been included in the jury instructions? I don't think he takes issue with the fact that the membership status is protected, but his argument is that that should have been included in the jury instructions, that there was interference with her rights as a union member. The cases that he cited, Your Honor, are from other circuits. What the Ninth Circuit has said on that in the Lynn case, which was affirmed at the United States Supreme Court level, recognizing the holding in Finnegan, it concluded that, as it said at page 1479, 804 F. 2nd at 1479, it said, quote, This fact, this fact, lack of direct infringement of membership rights is not dispositive, however, for the Finnegan court neither defined the scope of Section 102 claim nor held that only a direct infringement of a Title I right was actionable. What does that mean, it's not dispositive? Does it mean that it should be considered? Well, I think it should be considered from the standpoint of, if you look at the court's prior holding in Grand Lodge, Finnegan, of course, came after Grand Lodge, and it narrowed Grand Lodge, but it never specifically overruled Grand Lodge in a case that has similar facts here. And there it held that retaliatory discharge in and of itself retaliating against a member for exercising her free speech rights is enough. So under the doctrine of stare decisis, let the decision stand. I would ask the court to abide by the holding in Grand Lodge, which is still good law, and was even cited as authority in the Schneider case in 1999. If you say, if you say that the interference with membership rights should be considered, how could the jury consider that if it's not included in the instructions? Well, I don't think it had to be included in the instructions from the standpoint of the Ninth Circuit. I think the retaliatory discharge, if they find, first, if they find under Finnegan that she was a non-policymaking employee or a non-confidential employee and she was and the jury finds that there was substantial evidence that she was retaliated against for exercising her rights as a union member, that that is enough under the LMRDA, based on the cases in the Ninth Circuit. In particular, I would refer the Court to, of course, Grand Lodge and the later cases coming after that, the Lynn case and the Murray case. I would also point out to the Court that there's not two elements here that were in this case. There's actually two separate claims that the jury found in favor of my client, Terry Francisco Farrell. The second one, of course, was that the union engaged in a deliberate and purposeful intent to suppress dissent within the union. Could you address the argument that we heard from the other side, that there really is not enough evidence of that to support a verdict on that point? Well, I would vehemently disagree, and I would also point out to the Court that there's not enough evidence of that to support a verdict on that point. What is the evidence that supports it in your view? Well, one example I would give, not only to mention what happened in the record regarding my client, but is the fact that one month after this election was held, Chris Wickstrand, who was involved running against Dave Smith for business manager, he was removed by the Joint Apprenticeship Training Committee, something that he served on as a member. And if you look at the record in that case from the trial, the reason why he was removed, according to Mr. Smith, was that he had been involved in the election against Mr. Smith, and that he had stood up and spoke out against my client, Terry Francisco Farrell, losing her job simply because she had exercised her speech rights protected under the LMRDA. And I would also draw the Court's attention when talking about the free speech rights, Justice White, in an occurring, concurring opinion. Justice White, is that the extent of the evidence that is to say her firing and the later firing of Terry Wickstrand? No, I wouldn't say that was the total issue in that case. I mean, she had hired an attorney. The attorney had addressed these issues with the union, telling them that we felt that her rights were being violated in the LMRDA. In there, we listed the fact that she had complained that she felt that her activities, both before the election and after the election, had been spied on and monitored. That was part of the record. She had been complaining about how she had been treated in the office after she notified Mr. Smith that she was going to support her fiancé. And I would just also point out, Your Honor, in the Notice of Appeal, what Mr. Hanna is taking exception to is the instructions that were given. He's not telling the Court, as part of his Notice of Appeal, that there is not substantial evidence to support this. So our position would be that that is waived. There clearly was substantial evidence. His other issue that he raises is that instead of Instructions 6 and 7 being given, the Court should have given instructions that he proffered, 24 and 29. But those instructions are from the Sixth Circuit. They are not from the Ninth Circuit, nor supported by the United States Supreme Court. And in his argument, in his brief, he tries to make an argument that somehow the Court was confused by the instructions that it gave. 6 and 7 that were given by the Court specifically state that she's got to prove a violation of her membership rights, not her employee rights, her membership rights on these two separate claims. And the Court, in the record, specifically said in there that the Court believed that these instructions were appropriate, that they clearly set forth a correct statement of law. This question of membership rights is a difficult one for me, and I'm struggling with it. This is, I'll tell you openly, this is an area of law with which I am not intimately familiar from prior exposure. What does it mean to interfere with her rights as an employee, excuse me, as a union member, as distinct from interfering with her rights as an employee? Or is there any distinction at all? I think there is a distinction, Your Honor. You say there is or there is not? I think there is a distinction. Okay. If you look at the concurring opinion of Justice White that affirmed the Lynn case, which, of course, was a Ninth Circuit case, Justice White, in that opinion, I'll just paraphrase, he said that if the case involves speech, it should make no difference if the officer is elected rather than appointed. The resolution of a case like this turns on whether an officer speaks as a member or as an officer in discharge of his or her assigned duties. If you look at the termination letter, it's clear that she was retaliated against for exercising her rights as a member by speaking out. But the Justice White passage you just read referred to duties. She had no duty to speak out. She might have had a right, but she certainly had no duty. She had no duty to speak out, but she had a right protected under the Bill of Rights under the LMRDA, where she had this right of protected speech. Now, had she been a policymaking employee, she certainly could have been fired. You don't dispute that. I don't dispute that at all. But it's also undisputed that she was a non-policymaking employee. That issue, that is not even an issue. It's undisputed that she was a non-policymaking employee. So under that law ---- Kagan. But if a policymaker can be fired for exercising the right to speak out, I don't think that means there's a First Amendment right. I mean, there may be a statutory right, but it doesn't sound like there's a First Amendment right, because if a policymaker can be fired for that, you know, you can't override constitutional right by statute. No. But in the case having to do with Finnegan, that involved business agents that had been appointed by the incumbent, and they were clearly policymaking employees. They were not like my client, who was a clerical employee, who, by the way, was not hired by Mr. Smith. She was hired by Mr. Smith's predecessor, and she had worked in that office for seven years. And there's no evidence that she had been anything but a good employee and that she was a member in good standing with the IBEW. Counsel, will you help me analyze this case? Let's start with point number one. As a union member, she had no right to be hired as a clerical staffer. Is that true? That she had no right as a union member to be hired as a clerical person? I don't think she had any right to be hired as a clerical person. Okay. Secondly, her employment was at will. Her employment was at will. So she could be discharged for no reason or a bad reason, except the public policy. Yes. Under the law of Washington that I'm familiar with, she could be terminated either with or without cause, assuming it did not violate either State or Federal law. Because she was a woman or her age. Correct. Or violated some public policy. What union member right was impacted by the exercise of their right to fire her at will? I think her union member right that was violated was her free speech right. That's true. Which is protected under the Bill of Rights. She has a right to campaign for the member of her choice. She has a right to speak out for that member. And, again, under the Lynn case, it doesn't indicate that she has to prove necessarily a direct infringement. Under the Grand Lodge case, if by falling into one of these exceptions, by being a non-policymaking employee, if she's retaliated against, if she's discharged from her union employment because she supported someone other than Mr. Smith and spoke out in the capacity of a member, that is considered a claim, a violation of the LMRDA. And, again, I would just point out to the Court, we had two separate claims. So if for some reason, I would ask the Court, you do not find on the first claim to affirm it, there is a second claim here. And there's been no – there's been nothing in the appeal where the union and Mr. Smith have claimed that there was non-substantial evidence supporting these – these verdicts. There was. When you say the second claim, you're now referring to the second? Deliberate and purposeful intent to suppress dissent within the union, Your Honor. I also want to – there were some other issues that were raised in the brief that I just wanted to touch on. One was the awarding of attorney fees in this case. That was addressed in the notice of appeal. I just want to take the last few minutes that I have to just address that. The standard of review, of course, in the Ninth Circuit is abuse of discretion. Based upon the decisions from this circuit, it's the position of Ms. Francisco Farrell that the district court's discretion in awarding fees should not be overturned unless the award was based on an inaccurate view of the law or a clearly erroneous finding of fact, which it's the position of Ms. Francisco Farrell that that was not the case. The courts have also said regarding the award of attorney fees that where the trial judge presided over every aspect of the case, this circuit has held that the district court's decision to grant attorney fees deserves deference. I would also want to point out that in the – under the LMRDA, there – since the LMRDA is silent on attorney fees, under the case law that's come down, one of the bases for awarding fees is a finding of bad faith. And it's our position, Ms. Francisco Farrell's position, that clearly with regard to bad faith that the district court appropriately looked at the jury's determination to award punitive damages against both Local 112 and David Smith. And also, if you look at the record at page 96, the court not only took into consideration punitive damages, but also took into consideration all of the evidence that had been presented at trial. And that is – that is directly referenced there in the record at page 96. The other issue that was raised in the appeal was having to do with the prejudgment interest. It's Ms. Francisco Farrell's position that there was no abuse of discretion in awarding prejudgment interest at the State law rate. The district court correctly applied the law and did not abuse its discretion that was afforded it. While the LMRDA is silent as to prejudgment interest, the district court did, we believe, in that – in that situation have the authority, based on the cases that we cited, to award prejudgment interest at that particular rate. And then a last issue that was raised in the brief, very briefly in a footnote by Mr. Hanna in his appellate brief, as well as in his notice of appeal, they raised the issue of this tardy filing as to prejudgment interest under FRCP59. It's our – it's our position that the district court did not abuse its discretion, that it – that it appropriately allowed prejudgment interest per the timely filing under FRCP60B, the motion that we made on the grounds of excusable neglect. There was only – the motion was filed one day late with no delay in the proceedings or prejudice to either Local 112 or David Smith, who were also on notice, I would point out to the Court, by the complaint and the pretrial order that Ms. Francisco Farrell was seeking prejudgment interest. And just to wrap up here, I would just ask the Court to affirm these jury verdicts. The exceptions that were taken to Instructions 6 and 7, it's our – it's the position of Ms. Francisco Farrell that those instructions correctly stated the law. And even if – even if there was error, this was a civil case. It was not a criminal case. There has to be a finding of – that this was harmful and not harmless error. And even if – it would be our position, even if Instructions 24 and 29 were given, in lieu of 6 and 7, that the jury would have found, based on the record, that there was substantial evidence still supporting these jury verdicts. Thank you. Thank you. You used all your time on direct, but why don't we give you a minute for rebuttal. Thank you very much. I'll be very, very quick. Regarding your question regarding right of membership, the rights of membership are actually enumerated in the statute. In 29 U.S.C. 411, they are listed, the right to vote, the right to run for office, the right to vote on collective bargaining agreements, the right to assemble. They're there. And among them is not employment. I just want to end quickly with what the district judge himself said about the instructions that he gave, because this was alluded to, and I think it's the salient point. I guess what I'm driving at is I'm not sure that 6 and 7 really deal with the issue of whether or not it's the responsibility of plaintiffs to prove that her rights as a union member were adversely affected by her termination from employment. The distinction being that federal law is designed to protect union members involving union rights, and their rights as union members. In this situation, there must be a showing that the termination of employment affected her union rights. The court made that observation and yet gave the instructions that did not contain that element. That is the mistake that brought us here. Do you agree with opposing counsel that there was no objection to the suppression of expression prong of the instruction? There was an objection to the instructions as a whole, as a mischaracterization of the law and a misstatement of the elements. The way that the instructions were combined into one instruction, that's all contained in the record. There was nothing about 6 and 7 that we agreed with. Thank you very much for your time. Thank both of you for a very helpful argument. The case of Francisco Farrell v. Local 112, International Brotherhood of Electrical Workers, is now submitted for decision.
judges: Alarcon, W. Fletcher, Rawlinson